UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| MK SALVAGE VENTURE LLC, a Washington limited liability corporation d/b/a MK SALVAGE LLC, | NO. |
| | COMPLAINT |
| Plaintiff, | (JURY DEMAND) |
| v. | |
| TETRA TECH EC, INC., a New Jersey corporation, | |
| Defendant. | |

COMES NOW, Plaintiff MK Salvage Venture, LLC d/b/a MK Salvage LLC, a Washington Limited Liability Company, by and through its attorneys and alleges that:

## I.   **PARTIES**

1.     Plaintiff MK Salvage Venture, LLC d/b/a MK Salvage LLC ("MK Salvage") is a Washington State limited liability company having its principal place of business at Seattle, Washington.

COMPLAINT - 1

CAIRNCROSS & HEMPELMANN,
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{02175490.DOCX;5 }

2.     Defendant Tetra Tech EC, Inc. ("Tetra Tech") is a New Jersey corporation with its principal place of business at Pasadena, California and with offices in Seattle, Washington. Tetra Tech is engaged in the business of providing consulting, engineering and technical services in the United States and abroad.  At all relevant times, Tetra Tech conducted business in Seattle, Washington.

## II.     JURISDICTION AND VENUE

3.     MK Salvage is a limited liability company created under the laws of the State of Washington, with its principal place of business in Seattle, Washington.   Tetra Tech is a corporation created under the laws of New Jersey.  Its principal place of business is in Pasadena, California.  Tetra Tech has offices in Seattle, Washington and at all relevant times, conducted business in Seattle, Washington.  The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.  Jurisdiction is conferred on this Court by the existence of complete diversity of the parties.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Tetra Tech conducts business in this district, Tetra Tech engaged in fraud and made material misrepresentations in this district, the contract at issue was negotiated and executed in this district, and this district has personal jurisdiction over Tetra Tech.

## III.     FACTS

5.     On August 15, 1901 the SS Islander sank near Juneau, Alaska.  It is believed that the cargo included hundreds of pounds of gold being transported from the Klondike to Seattle and San Francisco and beyond.  Ocean Mar Inc. ("OMI") is the sole and exclusive contract salvor for the SS Islander and her cargo.

6.     In May of 2012, OMI entered into an agreement with MK Salvage to participate in the salvage operation.  MK has been approved to participate in the salvage operation by the United States District Court for Alaska in Anchorage.  The salvage operation has commenced and is proceeding at this time. OMI and MK are conducting this salvage operation under a

COMPLAINT - 2

CAIRNCROSS & HEMPELMANN,
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{02175490.DOCX;5 }

1    Confidentiality Order issued by the Honorable Judge Holland of the United States District Court

2    for the District of Alaska.

3        7.    Tetra Tech contracted with MK Salvage to assist with coring and pre-salvage

4    efforts.  Tetra Tech representatives talked MK Salvage into adopting a phased approach to the

5    salvage effort with Phase 1 being bottom mapping and non-ferrous target identification.  Tetra

6    Tech represented repeatedly that it had  reliable and proven technology to successfully conduct

7    and complete Phase 1.  Over the course of many meetings, MK Salvage made it quite clear that it

8    was not interested in providing a test platform for any technology that was in the developmental

9    stage.  If the technology was not going to work in the known, hostile Alaska environment, then

10   MK Salvage was not going to hire Tetra Tech.  Tetra Tech personnel repeatedly assured MK

11   Salvage that Tetra Tech's technology would work.

12       8.    Everyone involved in the planning for this project, including Tetra Tech,

13   understood that the treasure targets were not going to be found proud, i.e. they would be buried

14   in whatever silt there was.  Before entering into the Tetra Tech contract and beginning the Phase

15   1 mapping and target identification, MK Salvage hired Tetra Tech to do sea-bottom coring on

16   site to confirm the sediment depths and to obtain core samples of the sediments at the site.  Tetra

17   Tech failed to bring the right equipment to the salvage site, which caused delay and extra cost to

18   MK Salvage.  MK Salvage specifically asked Tetra Tech to have the samples analyzed by at

19   least four experts.  However, unbeknownst to MK Salvage, Tetra Tech unilaterally made the

20   decision to analyze the samples in-house and provided only the opinion of its own geologist that

21   the likely sinking depth of the gold was between 21 inches and 31 inches.  On site in June 2012,

22   and later while pursuing Phase 2, MK Salvage learned that the sediments were consistently 6 to 8

23   feet.  MK Salvage would not have hired Tetra Tech to do this coring work if it had known that

24   Tetra Tech would not follow through with the analysis of the core samples it promised in order

25   to definitively confirm the true sediment depth.

26

COMPLAINT - 3

CAIRNCROSS & HEMPELMANN,
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{02175490.DOCX;5 }

9.      Before MK Salvage hired Tetra Tech to proceed with the coring, and again before spending any significant funds on Phase 1, MK Salvage repeatedly and specifically sought confirmation from Tetra Tech that it guaranteed its technology would detect non-ferrous materials up to 8 feet under the silt. In a meeting in Seattle, Washington in April 2012, Tetra Tech specifically guaranteed and represented to MK Salvage representatives that the technology Tetra Tech was selling would work for the defined project including, inter alia, detect gold 8 feet under the silt; locate ferrous and non-ferrous targets; and then narrow the search field to non-ferrous targets.

10.      If Tetra Tech had been forthcoming at the April 2012 meeting (or any time before or after that meeting) about the limitations of the Tetra Tech technology, all of which subsequently became apparent on the site in June, 2012, MK Salvage would never have contracted with Tetra Tech for any work, and MK Salvage would not have undertaken the costly coring or Phase I. However, based on Tetra Tech's guarantee, MK Salvage relied entirely on Tetra Tech to provide the technology for Phase 1.

11.      In addition to providing the guarantee, Tetra Tech representatives told MK Salvage representatives that their technology detection capability would likely exceed 8 feet, penetrating as deep as 10 feet under the sediment. MK Salvage did not learn that this was not accurate until they were on site in June 2012 and were already under contract with Tetra Tech. In June 2012, Tetra Tech technicians finally disclosed that actually, the maximum detection capability of their equipment is 1.5 meters. Therefore, for example, if the equipment was flying (being towed) 1 foot above the sea bottom, then the maximum depth of penetration into the sediment was only 3.5 feet.

12.      Prior to entering into the contract with Tetra Tech, MK Salvage repeatedly told Tetra Tech that the targets were gold bars and/or boxes of gold in wooden boxes wrapped with metal bands. Tetra Tech personnel independently confirmed that this is what the targets would likely be—single gold bars and boxes of gold bars. Tetra Tech repeatedly assured MK Salvage

COMPLAINT - 4

CAIRNCROSS & HEMPELMANN,
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{02175490.DOCX;5 }

that the Tetra Tech technology would be able to locate and identify either the bars or the boxes. However, once the parties were on site in June, 2012, MK Salvage learned for the first time that the detection capability that Tetra Tech had been selling was projected to work only for targets larger than a gold bar, such as a box of gold. It was on site in June 2012 that Tetra Tech technicians, for the first time, admitted they were dubious about their technology having the ability to detect a bar of gold in any depth of sediments. In addition, MK Salvage learned for the first time from the Tetra Tech technicians on site that even boxes of gold would not be located because they were wrapped with iron straps—the ferrous metal on the boxes would mask the non-ferrous materials in the boxes. The very targets that Tetra Tech understood MK Salvage was seeking to find could not be found—and this was known to Tetra Tech (and entirely unknown to MK Salvage) before MK Salvage signed the contract.

13.     MK Salvage worked with Tetra Tech to make certain Tetra Tech had intimate knowledge of the site conditions, the water temperatures, the depths involved, the currents, and the objectives of the operation. Tetra Tech personnel visited the salvage site on at least one occasion before the salvage operation commenced. Tetra Tech represented that their technology was fully field tested and that the equipment would work in the anticipated depths up to 500 feet. Yet when Tetra Tech arrived on site, MK Salvage found out for the first time that the equipment had never been tested at depths beyond 200 feet, and the battery boxes (a critical component) were only pressure rated for 210 feet. In addition, it was revealed at the site, again for the first time, that Tetra Tech had not pre-tested the equipment in salt water to assess what buoyancy issues there would be, and Tetra Tech had not tested the use of the equipment in currents that existed at the SS Islander salvage site. Ultimately, the equipment broke before the contemplated work was completed.

14.     Even if the equipment had not broken and all the anticipated scanning work had been completed, it would not have provided the data Tetra Tech promised. Tetra Tech spent several days towing the equipment around the bow structure of the SS Islander to obtain ferrous

COMPLAINT - 5

CAIRNCROSS & HEMPELMANN, ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

{02175490.DOCX;5 }

targets.   Once the targets were identified, Tetra Tech was then going to tow another piece of equipment over the targets—this device was supposed to discern between ferrous and non-ferrous targets.   This was the "secret sauce" so to speak.   However, after having spent all that time identifying targets, the Tetra Tech technicians advised MK Salvage, for the first time, that a ferrous object generates a 9 foot diameter circle around itself.   Thus, anything non-ferrous in that 9 foot circle cannot be identified by their equipment.   For example, a box of gold wrapped with iron straps would not be detected because the iron straps would generate a ferrous field in a 9 foot circle around the box.

15.    Tetra Tech's equipment repeatedly failed, causing several substantial delays and forcing the parameters of the project to be repeatedly refined downward.   As a direct result, the bottom surface area that was supposed to be scanned and analyzed ended up being more than 50% less than what was contemplated by Tetra Tech and MK Salvage when the contract was signed.

16.    Despite the above misrepresentation and failures, Tetra Tech has billed MK Salvage $625,710.12 for its work.   However, MK Salvage has incurred several hundred thousands of dollars in the effort to complete Phase I, which MK Salvage would not have spent but for having relied on the guarantees and misrepresentations of Tetra Tech and compensating for Tetra Tech's misrepresentations.   Moreover, MK Salvage lost over two months of time that could have been devoted to the critical Phase 2 site excavation efforts at the bow.   In this time critical operation (both the weather window and the duration of the salvage contracts), that 2 months represents a significant amount of lost time that can never be recovered.

## IV.    FIRST COUNT --FRAUDULENT INDUCEMENT/CONCEALMENT

1.    Plaintiff repeats and incorporates by reference each of the allegations contained in the prior paragraphs of this Complaint.

2.    Tetra Tech knowingly made material and false representations to MK Salvage and concealed material information about technology Tetra Tech sold, including but not limited to

COMPLAINT - 6

CAIRNCROSS & HEMPELMANN,
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

{02175490.DOCX;5 }

1  the experimental nature of the technology, its inability to detect non-ferrous materials up to 8

2  feed under the silt, its inability to detect gold bars and its inability to detect boxes of gold bars

3  that were wrapped in iron strap, as well as other material and false misrepresentations as

4  aforesaid.

5        3.     Tetra Tech's false representations and concealments induced MK Salvage to

6  contract with Tetra Tech.   Tetra Tech knew or should have known of the falsity of the

7  representations and omissions it made upon which MK Salvage reasonably relied.  Plaintiff was

8  ignorant of the falsity of Tetra Tech's representations and the information Tetra Tech concealed.

9  Tetra Tech intended to induce MK Salvage to act based on Tetra Tech's false representations and

10  concealments, upon which MK Salvage reasonably and justifiably relied.

11        4.     As a direct and proximate result of Defendant's willful, malicious and wrongful

12  conduct in intentionally making false and material representations and warranties with the

13  intention that Plaintiff rely thereon, as well as Defendant's concealments and nondisclosures of

14  material facts intending that Plaintiff would thereby be misled, Plaintiff has been defrauded and

15  damaged.

16        **V.**     **SECOND COUNT-- BREACH OF COVENANT OF GOOD FAITH AND**

17        **FAIR DEALING**

18        1.     Plaintiff repeats and incorporates by reference each of the allegations contained in

19  the prior paragraphs of this Complaint.

20        2.     The covenant of good faith and fair dealing is implied by law into every contract.

21        3.     Tetra Tech breached the covenant of good faith and fair dealing by, at a

22  minimum, overselling its capabilities in order to secure a contract and then failing to deliver on

23  its promises; by its failure to provide equipment that functioned in the site conditions and

24  achieve its intended purpose; by misrepresenting the reliability and capability of the technology

25  Tetra Tech sold; by failing to properly analyze the coring samples; by failing to ensure its

26  equipment and technology would work properly in the known site conditions; by causing delay

COMPLAINT - 7

CAIRNCROSS & HEMPELMANN,
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{02175490.DOCX;5 }

and causing a significant change in the project scope; by failing to provide a meaningful deliverable; by ultimately abandoning the contract and otherwise breaching the representations and warranties as aforesaid.   Tetra Tech failed to act in good faith in its negotiations and performance of the agreement.   It acted dishonestly, deceptively and with improper motive to injure the right of MK Salvage to receive the benefits  of and reasonable expectations of the parties' agreement.

4.    As a result of the foregoing breaches of the implied covenant of good faith and fair dealing, MK Salvage has been damaged.

## VI.    THIRD COUNT -- BREACH OF AGREEMENT/ REPRESENTATIONS AND WARRANTIES

1.    Plaintiff repeats and incorporates by reference each of the allegations contained in the prior paragraphs of this Complaint.

2.    Tetra Tech breached the Agreement by, at a minimum, overselling its capabilities in order to secure a contract and then failing to deliver on its promises; by its failure to provide equipment that functioned in the known site conditions and achieve its intended purpose; by misrepresenting the reliability and capability of the technology Tetra Tech sold; by failing to properly analyze the coring samples; by failing to ensure its equipment and technology would work properly in the site conditions; by causing delay and causing a significant change in the project scope; by failing to provide a meaningful deliverable; by ultimately abandoning the contract and otherwise breaching the representations and warranties as aforesaid.

3.    As a result of the foregoing breaches of the parties' contract and its representations and warranties on the part of Tetra Tech, MK Salvage has been damaged.

## VII.    FOURTH COUNT-- NEGLIGENT MISREPRESENTATION

1.    Plaintiff repeats and incorporates by reference each of the allegations contained in the prior paragraphs of this Complaint.

COMPLAINT - 8

CAIRNCROSS & HEMPELMANN,
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{02175490.DOCX;5 }

2.     Tetra Tech negligently made false written representations to MK Salvage and failed to disclose material information about technology Tetra Tech sold, including but not limited to the experimental nature of the technology, its inability to detect non-ferrous materials up to 8 feed under the silt, its inability to detect gold bars and its inability to detect boxes of gold bars that were wrapped in iron strap, and other material and false misrepresentations as aforesaid.

3.     Tetra Tech failed to exercise ordinary or even slight care in making its false representations upon which Plaintiff reasonably relied. Tetra Tech made these representations and nondisclosures with a conscious and voluntary disregard of the truth.  Plaintiff relied upon Tetra Tech's negligently false representations and nondisclosures of material facts, which the Defendant had a duty to disclose to Plaintiffs.

4.     As a direct and proximate result of the foregoing, Plaintiff has been damaged.

### VIII.   PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand judgment against Tetra Tech for:

a.     Damages in an amount to be determined at trial;

b.     Attorneys' fees and expenses allowed by law and/or the parties' agreement;

c.     Pre and post judgment interest and costs of suit;

d.     Punitive damages; and

e.     Such other and further relief as the Court deems equitable and just.

### IX.     JURY DEMAND

1.     Pursuant to FED. R. CIV. P. 38(b), MK Salvage demands a trial by jury of all issues presented in this complaint which are triable by jury.

COMPLAINT - 9

CAIRNCROSS & HEMPELMANN,
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

1    DATED this 14th day of January, 2013.

2                                    CAIRNCROSS & HEMPELMANN, P.S.

3

4                                    _____
                                     Stephen P. Vanderhoef, WSBA No. 20088
5                                    Ana-Maria Popp, WSBA No. 39614
                                     524 Second Avenue, Suite 500
6                                    Seattle, WA  98104-2323
                                     Telephone: (206) 587-0700
7                                    Facsimile: (206) 587-2308
                                     E-mail: jpowell@cairncross.com
8                                    E-mail: apopp@cairncross.com
                                     **Attorneys for Plaintiff**
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 10

CAIRNCROSS & HEMPELMANN,
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

{02175490.DOCX;5 }